IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:23-CV-152-RJ

AYESHAH BAKER,

    Plaintiff/Claimant,

v.

MARTIN O'MALLEY,
*Commissioner of Social Security*,

    Defendant.

O R D E R

This matter is before the court on the parties' briefs filed pursuant to the Supplemental Rules for Social Security Actions. [DE-16, -20]. Claimant Ayeshah Baker ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the denial of her applications for Supplemental Security Income ("SSI") payments. Having carefully reviewed the administrative record and the briefs submitted by the parties, the decision of the Commissioner is affirmed.

**I. STATEMENT OF THE CASE**

Claimant protectively filed an application for SSI on November 14, 2017, alleging disability beginning September 10, 2001. (R. 15, 412–17). The claim was denied initially and upon reconsideration. (R. 15, 96–137). Claimant did not appear for her administrative hearing on March 11, 2020, and was granted a continuance. (R. 91–95). A telephonic hearing before the Administrative Law Judge ("ALJ") was held on August 18, 2022, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 15, 36–90). Claimant

amended her alleged onset date to January 1, 2022. (R. 444–45). On November 9, 2022, the ALJ issued a decision denying Claimant's request for benefits. (R. 12–35). On January 23, 2023, the Appeals Council denied Claimant's request for review. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d

438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 416.920a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial

3

gainful activity since January 1, 2022, the amended alleged onset date. (R. 17–18). Next, the ALJ determined Claimant had the severe impairments of venous insufficiency with lymphedema, Graves' disease, left knee degenerative joint disease, obesity, and degenerative disc disease of the cervical spine, and she also had non-severe impairments of gastroesophageal reflux disease, tobacco abuse, borderline personality disorder, general anxiety disorder, panic disorder, major depressive disorder, bronchitis, and substance use disorder in remission. (R. 18–19). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in understanding, remembering, or applying information; interacting with others; adapting or managing oneself; and concentrating, persisting, or maintaining pace. (R. 18–19). However, at step three, the ALJ concluded the impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 19–21).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform sedentary work[1] with the following limitations:

> She can occasionally reach overhead with her bilateral upper extremities. For all other reaching she can reach frequently to the left and can reach frequently to the right. The claimant can occasionally climb ramps and stairs, as well as occasionally stoop, kneel, and crouch. The claimant can never climb ladders, ropes, scaffolds, or crawl. The claimant can never work at unprotected heights, and never operat[e] a motor vehicle (she does not have a driver's license)[.] The claimant must avoid concentrated exposure to extreme cold and to tools and work processes that would expose her lower extremities on a concentrated basis to vibration. The claimant's time off task can be accommodated by normal breaks.

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 416.967(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id.*

4

(R. 21–26). In making this assessment, the ALJ found Claimant's statements about her limitations not entirely consistent with the medical and other evidence of record. (R. 22).

At step four, the ALJ concluded Claimant was unable to perform her past relevant work as a fast-food worker or hair stylist. (R. 26–27). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant was capable of performing other jobs that exist in significant numbers in the national economy. (R. 27–28).

## V. DISCUSSION

Claimant contends the ALJ erred in the RFC in considering the need to elevate her legs due to lower extremity edema from severe bilateral venous reflux disease. Pl.'s Br. [DE-16] at 8–11. The Commissioner contends the ALJ properly evaluated Claimant's edema and substantial evidence supports the ALJ's findings. Def.'s Br. [DE-20] at 7–17.

The RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 416.945(a)(1); *see also* SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 416.945(a)(3); *see also* SSR 96-8p, 1996 WL 374184, at *5. "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting SSR 96-8p); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir.

5

2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion").

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. § 416.945(a)(3). The applicable regulation provides that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Claimant's] medical sources." 20 C.F.R. § 416.920c(a). Instead, the ALJ must consider the persuasiveness of medical opinions using five factors: (1) supportability, meaning that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions or prior administrative medical finding(s) will be"; (2) consistency, meaning that the more consistent an opinion is with other evidence in the record, the more persuasive the medical opinion will be; (3) the medical source's relationship with the claimant, which considers the length of the treating relationship, frequency of examinations, purpose of the treating relationship, extent of the treatment relationship, and whether the medical source examined the claimant; (4) specialization, meaning that "a medical source who has received advanced education and training to become a specialist may be more persuasive"; and (5) "other factors that tend to support or contradict a medical opinion." *Id.* § 416.920(c)(1)–(5). The most important factors are supportability and consistency. *Id.* § 416.920c(a).

Claimant testified at the administrative hearing that she has poor circulation in her legs that causes swelling and pain. (R. 61). She experiences constant swelling, but the severity varies. (R. 64). Standing for long periods of time exacerbates the swelling, and she can stand for no more than 20 minutes or walk for no more than five minutes before needing to sit and rest for 30–60

6

minutes. (R. 65–66). Claimant attempted to work as a hair stylist from June to December 2021, but had to stop because her legs "got really, really bad" and she had to elevate them for longer. (R. 57, 66, 71–72). She can sit for no more than 15–20 minutes before needing to elevate her legs due to pain, and she elevates her legs for 30–60 minutes at least five or six times a day. (R. 66–67, 70–71). Claimant wears compression stockings but they cut into her skin and make her feel worse, and she must elevate her legs above chest level to maximize the effect. (R. 68, 73). The VE testified that a need to elevate the legs at or above waist level would preclude all work. (R. 82, 86).

The ALJ discussed Claimant's testimony, treatment records, and opinion evidence related to her lower extremity edema, but concluded that she could still perform a reduced range of sedentary work without the need for leg elevation. (R. 22–26). The ALJ does not directly state why Claimant's testimony regarding the need to elevate her legs was not credited, but the ALJ's discussion of the treatment records and the opinion evidence is sufficient to trace his reasoning that he believed her edema improved such that she no longer required leg elevation. *Id.*; *Campbell v. Kijakazi*, No. 5:22-CV-250-RJ, 2023 WL 6213439, at *5 (E.D.N.C. Sept. 25, 2023) (failure to specifically explain why an accommodation for leg elevation was not included in the RFC was not error where it was "apparent from the ALJ's RFC discussion that he did not ignore Claimant's edema and leg elevation . . . but rather determined that an accommodation was unnecessary for Claimant to perform a reduced range of light work") (citing *Newsome v. Kijakazi*, No. 2:21-CV-46-FL, 2023 WL 2322969, at *5 (E.D.N.C. Jan. 18, 2023), *adopted by*, 2023 WL 2315426 (E.D.N.C. Mar. 1, 2023)).

Claimant takes issue with the ALJ's assessment of PA-C Polley's March 30, 2021 letter

7

stating that Claimant could return to work on March 31, 2021, with the recommendation that she be able to elevate her legs for 5–10 minutes once per hour and wear compression stockings while standing, and the opinion expired by its own terms on June 30, 2021. (R. 1369). The ALJ found the opinion to be of limited persuasive value because it predated Claimant's amended alleged onset date of January 1, 2022, was time limited, and medical records post-dating the letter showed notable improvement in Claimant's lower extremity edema. (R. 25–26). Claimant concedes that the letter expired on June 30, 2021, but points out that Claimant continued to have edema noted in later medical records and her treatment providers directed her to elevate her legs in July and September 2021. (R. 1379, 1399).

Both of the treatment notes on which Claimant relies also predate her amended alleged onset date, *id.*, and as the ALJ pointed out, on February 8, 2022, it was noted that Claimant's bilateral non-pitting pedal edema was still present but significantly improved, (R. 1371). (R. 23). On May 12, 2022, Claimant was noted by cardiology to have bilateral edema and was prescribed thigh-high stockings for venous insufficiency with no mention of a need to elevate her legs. (R. 23, 1424). On June 24, 2022, Claimant was still positive for leg edema, and it was noted that she had been recommended to wear compressive stockings but there is again no mention of any need to elevate her legs. (R. 1422). Thus, the ALJ did not err in discounting PA-C Polley's opinion because it predated the alleged onset date, was time limited, and was inconsistent with Claimant's later improvement. *See Beisler v. Kijakazi*, No. 7:20-CV-170-RJ, 2022 WL 673270, at *5 (E.D.N.C. Mar. 7, 2022) (finding the ALJ appropriately considered a medical opinion that predated the claimant's onset date and was inconsistent with more recent medical records).

Furthermore, the ALJ did not cherry pick evidence, but rather weighed arguably

8

contradictory evidence and determined that Claimant did not require leg elevation. *See* (R. 22–26) (discussing medical records indicating edema was at times present, at times absent, and at times present but significantly improved). It is not the court's role to "to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citation omitted). There are no opinions from the relevant period, after Claimant was recommended by cardiology to wear compression stockings for her venous insufficiency, that indicate she was required to elevate her legs to a height or with a frequency that would preclude work. (R. 1422–28); *see Campbell*, 2023 WL 6213439, at *5 (finding no error in failure to include leg elevation requirement related to edema in RFC where the claimant's "physicians at times recommended that Claimant elevate his legs, but there are no opinions that suggested this was a permanent restriction or that he must do so with more frequency than could be accomplished within the regularly scheduled work breaks."); *Tory R. v. Saul*, No. CV 1:20-2664-SVH, 2021 WL 1115911, at *17 (D.S.C. Mar. 24, 2021) (recommendation for providers to elevate feet as much as possible "provided no specifications as to the frequency with which Plaintiff should elevate his legs, making it unclear as to whether the recommendation would affect his ability to satisfy the sitting, standing, and walking requirements of a normal workday."). Although Claimant testified that her compression stockings made her legs feel worse, (R. 68), the treatment notes do not indicate that she so advised her providers.

The ALJ applied the correct standards and adequately explained his decision, which is supported by substantial evidence. *See Biestek v. Berryhill*, 587 U.S. —, 139 S. Ct. 1148, 1154 (2019) (explaining the threshold of "substantial evidence" is not high, but rather is "more than a mere scintilla" or "such relevant evidence as a reasonable mind might accept as adequate to support

a conclusion") (citations omitted). Accordingly, the ALJ did not err in failing to include a limitation for leg elevation in the RFC, and decision of the Commissioner is affirmed.

## VI. CONCLUSION

For the reasons stated above, and the decision of the Commissioner is affirmed.

So ordered, the **2 3** day of May, 2024.

Robert B. Jones, Jr.
United States Magistrate Judge